```
          IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                  TEXARKANA DIVISION
```

**PAM McLAUGHLIN**                                              PLAINTIFF

        v.        Civil No. 06-4069

**CITY OF NASHVILLE, ARKANSAS;
MIKE REESE, Individually and in
His Official Capacity as Mayor
of the City of Nashville;
JOHNNY BOWMAN, in his individual
and official capacities; and
JOHN SIPES, ANDY ANDERSON, CAROL
WILLIAMS, KAY GATHRIGHT, VIVIAN
WRIGHT, ALSONYA TURNEY, NICKY
DAVIS, JACKIE HARWELL, BOBBY
KEASTER, FREDDY BROWN, and JIMMIE
KIRKPATRICK, in their official
capacities as Nashville City
Council Members**                                              DEFENDANTS


## O R D E R

Now on this 23rd day of October, 2006, come on for consideration the following motions:

* **Motion To Dismiss** (document #2) of all defendants;

* **Motion To Dismiss by Mike Reese, In His Individual Capacity** (document #5); and

* **Motion To Dismiss By Mike Reese And Johnny Bowman, In Their Individual Capacities** (document #6),

and from said motions, and the responses thereto, the Court finds and orders as follows:

1.    Plaintiff Pam McLaughlin ("McLaughlin") brings this suit pursuant to **42 U.S.C. §1983** and **§1988.** McLaughlin alleges that at

the relevant time, she was the Finance Director of the City of Nashville (the "City"); that defendant Reese was the Mayor of Nashville; and that defendants Sipes, Bowman, Anderson, Williams, Gathright, Wright, Turney, Davis, Harwell, Keaster, Kirkpatrick, and Brown were members of the Nashville City Council. McLaughlin alleges that she spoke out about an issue important in an election contest between Reese and his opponent, and was fired in retaliation after Reese won the election, in violation of her freedom of speech and association under the United States Constitution and the Arkansas Constitution.

McLaughlin further contends that she was wrongfully terminated in violation of the public policy of the State of Arkansas; that Reese defamed her; that Reese and Bowman conspired to terminate and defame her; and that the City violated the Arkansas Freedom of Information Act in connection with requests that she made.

2. Defendants first seek dismissal of McLaughlin's federal constitutional claims against them in their official capacities, pursuant to **F.R.C.P. 12(b)(6)**. They deny that McLaughlin was terminated for "political reasons," but contend that even if she had been, the statements which she believes led to her termination were not protected by the First Amendment. They argue that as a public employee making statements pursuant to her official duties, the Constitution does not insulate her from employer discipline,

citing **Garcetti v. Ceballos**, --- U.S. ---, **126 S.Ct. 1951 (May 30, 2006)**.

McLauglin responds that she was speaking in her capacity as a citizen and not as part of her official duties, on a matter of public concern, and thus her speech was protected under the teachings of **Pickering v. Board of Education of Township High School District 205, Will County, Illinois**, 391 U.S. 563 (1968) and **Connick v. Myers**, 461 U.S. 138 (1983).

3. It is axiomatic that a complaint should not be dismissed for failure to state a claim unless, taking the allegations of the complaint in the light most favorable to the plaintiff, it appears beyond doubt that she can prove no set of facts in support of her claim which would entitle her to relief. **Krentz v. Robertson Fire Protection District**, 228 F.3d 897 (8th Cir. 2000).

In order to apply this precept, the Court has examined the allegations of the Complaint as they relate to the causes of action sought to be dismissed by the motions now under consideration. Those allegations may be briefly summarized as follows:

- \* McLaughlin was employed as the Finance Director of the City of Nashville from February, 2001, until terminated by Reese on May 24, 2006.

- \* In March, 2006, Keaster, a Nashville City Council member, asked McLaughlin for copies of the operational

financial budget for 2006 and the operational financial report for 2005. McLaughlin gave Keaster the requested copies.

* At the time, there was a mayoral election campaign going on between Reese, who had been Mayor since January 2003, and Bo Castleberry. The primary election was scheduled for May, 2006.

* On or about May 10, 2006, Castleberry mailed out campaign flyers in which he accused the City of having operational deficits. He attached to the flyers copies of the financial documents Keaster had obtained from McLaughlin.

* On May 18, 2006, the local newspaper quoted Reese as saying that the financial documents[1] contained misleading information.

* On May 19, 2006, Bowman repeatedly telephoned McLaughlin and accused her of generating false financial information to help Castleberry.

* On May 22, 2006, McLaughlin published a newspaper advertisement and a radio address in which she opined that Reese was misleading the public about the City's finances. A copy of the advertisement is attached to

---

[1] A copy of the newspaper article is attached to the Complaint, and it reflects that these statements have to do with the flyer itself, rather than the financial documents attached to it. However, the Court is constrained, at this point, to accept the allegations of the Complaint as true.

the Complaint. It states that "[m]y duties include preparing and giving out the accurate financial facts of the city to anyone who requests this information. . . . I was fulfilling these responsibilities when I gave out the financial statement that many of you received in a recent mail out." It goes on to explain why McLaughlin believed Reese's statements about City finances were misleading. In a newspaper article published that same day, McLaughlin was quoted consistently with the information in her advertisement.

* Bowman, who supported Reese in the mayoral campaign, told McLaughlin that her radio address would result in "something most unfortunate" for her.

* On May 23, 2006, Reese won the election against Castleberry.

* On May 24, 2006, Reese terminated McLaughlin. No reason was given.

* McLaughlin had been evaluated as having "excellent" performance in the review period just before her termination.

* McLaughlin was terminated because Reese and Bowman "perceived that she was providing aid and support to Defendant Reese's political opposition."

4. In **Garcetti**, the Supreme Court held that "when public

employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." **126 S.Ct. at 1960**. The employee in **Garcetti** was disciplined on the basis of speech which was indisputably made in the course of his official duties.

In *dicta*, the Court stated that "[e]mployees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." **126 S.Ct. at 1961**. In those situations, it is still appropriate to conduct the analysis outlined in **Pickering**, because of "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion." **126 S.Ct. at 1958.**

Viewing the Complaint in the light most favorable to McLaughlin, the Court finds that it states a claim that McLaughlin's speech activities were performed in her capacity as a concerned citizen, rather than in her official capacity as the City of Nashville Finance Director. The conduct alleged to have caused her termination was not the preparation of the financial documents given by McLaughlin to Keaster, which would clearly constitute "a statement [made] pursuant to her official duties," but rather her own act of speaking out - via newspaper and radio -

about the financial situation of the City, as to which she was well-informed by virtue of her job, i.e., "the well-informed views of government employees engaging in civic discussion." A favorable reading of the Complaint leads to the inference that McLaughlin's views were expressed at her own expense and on her own time, to counter her perceptions that her credibility was being impugned and that the electorate was being misled. As a result, the Court concludes that its First Amendment analysis is controlled by **Pickering** rather than **Garcetti**.

5. **Pickering** called for a balancing of the interests of a public employee in commenting on matters of public concern and the interest of the governmental employer in promoting the efficiency of its services. As the Court explained in **Garcetti**,

> *Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

**126 S.Ct. at 1958** (internal citations omitted).

The Court has already resolved the first part of the **Pickering** test, finding that the Complaint adequately alleges that McLaughlin spoke as a citizen rather than as an employee. The matters upon which McLaughlin commented - the financial condition of the City and management of the City's budget - are certainly matters of public concern and importance. "Allegations of the misuse of public funds relate directly to citizens' interests as taxpayers, and are generally considered to address matters of public concern. . . . Speech that criticizes a public employer in his capacity as a public official also addresses matters of public concern." **Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000)** (internal citations and quotation marks omitted).

The remaining question is whether defendants had an "adequate justification for treating [McLaughlin] differently from any other member of the general public." **Pickering** recognized several situations in which this might be the case: where the speech might affect discipline by an employee's immediate superiors; where the employee's performance or the regular operation of the workplace would be impeded; and where there is "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." **Garcetti** added to this list: where the employee expresses "views that contravene governmental policies or impair the proper performance of governmental functions."

In the balance against these risks to government as employer, courts must weigh not only the employee's right to speak, but "the public's interest in receiving informed opinion." **Garcetti**, **1126 S.Ct. at 1959**. The burden of demonstrating a risk to effective government falls on the government employer. **Belk**, *supra*.

At this stage of the case there is no evidence of any risk to effective government. Defendants do not contend that McLaughlin's speech would impair her efficiency or effectiveness, nor that the workings of her office would be impeded, nor that her speech contravened governmental policies. While they describe McLaughlin as "the Mayor's right hand person for purposes of finance and budget," there is no evidence to support or flesh out that assertion or to bring it within the parameters of "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning" or conduct which would "impair the proper performance of governmental functions." The allegations of the Complaint support an inference that the City is organized in a mayor-city council form of government, making McLaughlin answerable to not one but thirteen people. Her duties, as described by her, are to prepare and report financial facts, but there is nothing to suggest that she is involved in setting financial policy. The Court, therefore, finds at this point no justification for the City or the Mayor to treat McLaughlin

differently from any other member of the general public.

The end result of the foregoing analysis is the Court's conclusion that McLaughlin has stated a viable claim for infringement of her First Amendment rights. The motion to dismiss as to that claim will, therefore, be denied.[2]

6. Reese and Bowman, who are sued not only in their official but also in their individual capacities, contend that they are entitled to qualified immunity for the actions they are alleged to have taken. Qualified immunity protects public officials from personal liability under **§1983** when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald, 457 U.S. 800 (1982).** Because McLaughlin has stated a claim for violation of a constitutional right, the Court turns to the issue of whether that right was "clearly established" at the time.

As the Supreme Court noted in the opening sentence of **Garcetti**, "[i]t is well settled that 'a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression'." **126 S.Ct. at 1954,** citing **Connick**, which was decided in 1983. As

---

[2] Defendants suggest in their various motions that, if the federal constitutional claim is dismissed, the state claims should also be dismissed. Because the Court has concluded that there is no basis for dismissal of the federal constitutional claim, it need not, and will not, address the argument that the pendent state claims should be dismissed.

noted in paragraph 5, *supra*, there are exceptions to this general proposition, and the Court recognizes the possibility that one of those exceptions might apply in this case. The applicability of those exceptions turns on issues of fact. While the Court agrees that it is important to resolve the qualified immunity issue at the earliest possible stage in litigation, **Saucier v. Katz**, **533 U.S. 194 (2001),** it remains to be seen whether, as a factual matter, McLaughlin and Reese had "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning," or whether her conduct might "impair the proper performance of governmental functions."

The existence of such a factual dispute precludes summary judgment on the issue of qualified immunity. **Hinshaw v. Smith**, **436 F.3d 997 (8th Cir. 2006)** (summary judgment inappropriate if there is a genuine dispute concerning predicate facts material to qualified immunity). The motion to dismiss on the basis of qualified immunity will, therefore, be denied.

7. Reese moves for dismissal of McLaughlin's defamation claim against him. He makes three arguments:

* that Arkansas no longer recognizes *per se* damages for defamation;
* that his statements were not about McLaughlin; and
* that his statements are covered by a qualified

privilege.

(a) Reese's first contention - while correct - does not justify dismissal. Although McLaughlin did plead "slander *per se*" in her Complaint, she also pled "slander for which she has suffered damages."

(b) Reese contends that her statements were about Castleberry - not McLaughlin - and, thus, were not defamatory. In response, McLaughlin points out that Reese was quoted in the newspaper article as saying that the problem with the financial documents attached to Castleberry's letter was that they "were not tracking transferred funds properly, which is McLaughlin's job."[3]

To allege and prove a claim of defamation under Arkansas law, McLaughlin must show that a factual-type - and false - statement was made about her which was defamatory in nature; that it was published by or through the fault of Reese; and that it resulted in damages. **Faulkner v. Arkansas Children's Hospital, 347 Ark. 941, 69 S.W.3d 393 (2002).** A statement is defamatory if it "tends or is reasonably calculated to cause harm to another's reputation." **347 Ark. at 955, 69 S.W.3d at 402.**

In light of the authorities, the Court believes McLaughlin's Complaint has sufficiently pled the making of a defamatory

---

[3]McLaughlin claims that the statement "the problem with the letter is it's misleading" is defamatory, but as the Court has noted, this appears to refer to a letter written not by McLaughlin but by Castleberry. She also refers to several statements made by the newspaper reporter, but there is no showing that these can be attributed to Reese, and they, like Reese's statement, appear to relate to Castleberry's letter rather than McLaughlin's financial reports.

statement adequate to withstand Reese's motion to dismiss.

(c) Finally, as to the qualified privilege, the Arkansas Supreme Court has held:

> A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matters which, without such privilege, would be actionable.

**Wal-Mart Stores, Inc. v. Lee**, 348 Ark. 707, 74 S.W.3d 634 (2002) (citations omitted). This privilege is subject to multiple qualifications, however, and the issue of whether it applies is a question of fact. *Id.* Thus, this contention does not provide an adequate basis for granting the motion to dismiss.

For the foregoing reasons, the Court concludes that McLaughlin has sufficiently pled a cause of action against Reese for defamation and Reese's motion to dismiss that claim will be denied.

8. Reese and Bowman move to dismiss McLaughlin's claim of civil conspiracy against them for two reasons:

* the Complaint does not allege that Bowman telephoned or confronted McLaughlin pursuant to an agreement to defame or terminate her; and

* Reese and Bowman are both agents of the City, which is a corporation, and a corporation cannot conspire with itself.

The Court begins its analysis of these contentions with the observation that civil conspiracy is not a free-standing cause of action under Arkansas law:

> To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive, or immoral means, to the injury of another.

**Allen v. Allison, 356 Ark. 403, 413, 155 S.W.3d 682, 689 (2004).**

When the Complaint is read favorably to McLaughlin, as it must be at this early stage of the case, the Court believes it fairly alleges that Bowman and Reese - unhappy with McLaughlin's perceived support of Castleberry against Reese - worked together to punish her for that support by terminating her. The Complaint alleges, *inter alia*:

* that Bowman was a supporter of Reese;
* that Bowman accused McLaughlin of generating false information to help Castleberry and told McLaughlin that her radio address would result in "something most unfortunate" for her;
* that, although McLaughlin had been rated as "excellent," Reese terminated her without stating a reason on the day after the election; and
* that McLaughlin was terminated because Reese and Bowman "perceived that she was providing aid and support to Defendant's Reese's political opposition."

In the Court's view, the foregoing allegations are sufficient, under the notice pleading requirements of **F.R.C.P. 8**, to state a claim for civil conspiracy as against Reese and Bowman.

It must be remembered that, although both Reese and Bowman are agents of the City for some purposes, they are not agents for all purposes. The Court perceives no basis for the notion that they could be considered to be agents of the City with respect to conduct relating to Reese's efforts to be re-elected. The conduct complained of is of a type personal to Reese and Bowman - not something they would be expected to do in their respective positions within City government. The Eighth Circuit has held that "an intracorporate conspiracy may be established where individual defendants are also named and those defendants act outside the scope of their employment for personal reasons." **Garza v. City of Omaha, 814 F.2d 553 (8th Cir. 1987).**

For the foregoing reasons, the Court finds that the motion to dismiss the civil conspiracy claim against Reese and Bowman should be denied.

**IT IS THEREFORE ORDERED** that defendants' **Motion To Dismiss** (document #2) is **denied.**

**IT IS FURTHER ORDERED** that the **Motion To Dismiss by Mike Reese, In His Individual Capacity** (document #5) is **denied.**

**IT IS FURTHER ORDERED** that the **Motion To Dismiss By Mike Reese And Johnny Bowman, In Their Individual Capacities** (document

#6) is **denied.**

**IT IS SO ORDERED.**

      **/s/ Jimm Larry Hendren**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**